Fred A. Young, J.
This claim- was filed to recover damages for the wrongful death of Steven Monaco, Jr., allegedly caused through the negligence of the State of New York, its agents, servants and employees. The claim was duly filed and has not been assigned or submitted to any other officer or tribunal for audit or determination.
At approximately 11:00 a.m., on June 15, 1954 five-year-old Steven Monaco, Jr., in the company of about 100 other students from the St. Stanislaus School of Utica, arrived at the Verona Beach State Park for a school picnic. Supervising the picnic *448 were five nuns and a priest. The children proceeded to play about the beach and swim until lunch at 12 o’clock noon at which time one of the nuns noticed the Monaco boy missing. A general search began with the aid of the State police. Five days later the body of the child was found floating in the lake near Buoy 107 and about one and a half to two miles out in the lake. The coroner’s certificate certified that the cause of death was asphyxiation by drowning about noon June 15, 1954.
Oneida Lake is approximately 20 miles long and 5 miles wide at its widest point. Along the eastern end of the lake New York State has developed a swimming and picnicking area known as the Verona Beach State Park. The park shore runs for approximately 3,300 feet along the lake in a north and south direction and 700 feet of this distance is clearly defined for swimming; the remaining area being used for beach purposes only. To the north and south of the State Park are privately owned lands upon which are privately owned cottages. At the north and south boundaries of the supervised SAvimming area are signs marked
“ END OF SUPERVISED BATHING AREA NO BATHING OR SWIMMING BEYOND THIS POINT”.
Along the beach to the north of the supervised area is another sign AAdth an arroAV pointing in a southerly direction and reading
“ TO BATHING AREA ”.
The sign also reads
“ NO BATHING ALLOWED HERE ”.
From 9:00 a.m. until 12 o ’clock noon of each day two lifeguards are employed by the State. Their duties are primarily to supervise bathing within the swimming area and generally to keep others from going into the Avater along the unsupeiwised area of the beach within the park. During the crowded afternoons five lifeguards are kept on duty and three lifeguards patrol the area in the evenings.
It Avas further brought out during the trial that shortly after the buses arrived at the park, the Monaco boy "was seen leaving the bathhouse dressed for swimming and carrying his clothes under his arm. During the search and upon the investigation by the State troopers, it was found that the young Monaco boy and a classmate named Macilek AAandered along the beach in a northerly direction; that they Avent beyond the northern boundary of the park onto privately OAvned land; that they Avaded out into the waters in front of priAately OAvned cottages and played in several of the boats moored in the Avaters there- *449 ah outs; that approximately 500 feet north of the park boundary, the young boys untied a privately owned boat; that the Monaco boy was in the boat and started to drift out into the lake; that the Monaco boy asked the other boy to get into the boat with him but he refused; that this was the last time the Monaco child was seen alive; that to further substantiate this, the Monaco boy’s clothes were found in one of the other privately owned boats in which he had been playing.
It is alleged that the State was negligent in that its agents, servants and employees failed to properly supervise the beach, and swimming area; in that there were no signs or warnings indicating the demarcation point from the State Park to privately owned lands; in allowing the youth to leave the park area unrestrained in his activities.
The issues herein raise only one question: what is the proper measure of the State’s duty of care, if any, to the deceased? The State of New York holds title to the bed of Oneida Lake. (Roth v. State of New York, 262 App. Div. 370.) It has however set off a portion of its beach at the Verona Beach State Park as a swimming area and has further notified the public that swimming in other areas of the beach is prohibited. Therefore, when tiie claimant’s intestate wandered into an area beyond the park he no longer was an invitee of the State but became at most a licensee in the unsupervised portion of the State’s waters. (Vaughan v. Transit Development Co., 222 N. Y. 79.)
An owner of land owes to a mere licensee only the duty to abstain from affirmative acts of negligence. (Morse v. Buffalo Tank Corp., 280 N. Y. 110; Vaughan v. Transit Development Co., supra, Pendino v. State of New York, 196 Misc. 184, appeal dismissed 98 N. Y. S. 2d 664.)
This court feels that it would be unreasonable to require the State to guard every foot of park beach frontage when a definite swimming area was marked by buoys and lines and signs prohibited swimming in the other areas. It would follow, therefore, that it is not the duty and responsibility of the State to patrol outside the park or confine the children within its bounds. It seems that only the parents, or in this instance, the adult supervisors of the school group should do this. We feel that adequate supervision was provided by the State of New York. (Tuerck v. State of New York, 196 Misc. 300.)
We can find nothing in the evidence which would indicate that the claimant’s intestate was drowned due to any act of negligence on the part of the State of New York, its agents, servants and employees. (Tuerck v. State of New York, supra.)
*450 In view of the foregoing conclusions, and due to the fact the claimant’s intestate was non sui juris, the question of contributory negligence is academic.
The claimant having failed to establish facts sufficient to constitute a cause of action against the State of New York, its agents, servants and employees, the claim must be and is hereby dismissed upon the merits.
The foregoing constitutes the written and signed decision upon which judgment may be entered. (Civ. Prac. Act, § 440.)
Let judgment be entered accordingly.